## No. 22286.

HUGH L. PHILLIPS *v.* DARLENE F. PHILLIPS.
(464 P.2d 876)

Decided February 9, 1970.

128

F. E. DICKERSON, for plaintiff in error.

DOLAN & DOLAN, JOSEPH J. DOLAN, ZARLENGO, ZARLENGO, SEAVY & MULLIGAN, V. G. SEAVY, JR., for defendant in error.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

AN opinion was announced in this matter on August 5, 1969. Later a petition for rehearing was granted and the case was re-argued. The former opinion has been withdrawn and this one has been substituted therefor.

This writ of error involves a property division and support money payments in a divorce action commenced by Mrs. Phillips. When the parties were married in 1948 neither was possessed of property. Mr. Phillips was then a carpenter and with a partner was building two "speculative-type" houses in Seattle. In one sentence he gave the following capsule commentary of succeeding events:

"Well ... we moved to Boulder ... I got acquainted with some real fine people, ... I went into the building-land-development-real estate business, and, of course, it is a high risk business, so we tried to take advantage of growth or to weather any low spells."

At the time of the divorce Mr. Phillips' assets fell into the following three categories:

(a) Interest in two partnerships;
(b) Stock in nine local corporations;
(c) Solely owned property.

The partnerships and corporations generally were engaged in acquiring, subdividing, developing and selling real estate in the Boulder, Colorado area. He held a one-half interest in one partnership and a one-third interest in the other. His stock interests in the nine corporations varied from 10% to 50% of the entire stock issued.

Mrs. Phillips obtained an uncontested decree of divorce on May 25, 1964. The hearing on the property and money issues was held in June, 1965. At the conclusion of the proceedings, without any indication as to its views, the court asked counsel on each side to present proposed findings of fact and conclusions of law. These were sub-

mitted prior to July 1, 1965, and the court took no action thereon until October 25, 1965, when, without change, it entered those submitted on behalf of Mrs. Phillips *as of June 10, 1965.* Thereby Mrs. Phillips received the following award against Mr. Phillips:

(a) Cash in the amount of $400,000 in lieu of property division, $100,000 of which was payable "within one month from the date hereof," and the balance was payable in installments of $12,500 every three months, with interest payable quarterly at the rate of 5% per annum upon the deferred balance;

(b) $1,050 per month for the support of three children aged 3, 9 and 13 at the time of the hearing;

(c) $250 alimony, plus another $250 for any month when Mr. Phillips might be delinquent on any of the payments to be made under (a) above;

(d) Payment by Mr. Phillips of all then unpaid family accounts;

(e) Fees of attorneys, appraisers and accountants;

(f) Furniture.

Each side had its own appraiser. The court appointed a third appraiser. Each party had a certified public accountant to interpret the appraisements and to develop net worth figures. As occasionally is the case in this type of litigation, Mr. Phillips' net worth according to his experts was smaller than the opinions and calculations developed by those of Mrs. Phillips. In fact, the court's award to Mrs. Phillips in lieu of property division, according to Mr. Phillips' appraiser and accountant, exceeded his entire net worth. Somewhat strangely, the values of the court-appointed appraiser exceeded those of Mrs. Phillips' appraiser. The findings prepared by Mrs. Phillips' counsel and adopted by the court were predicated upon the opinions and calculations of her appraiser and her accountant.

■ We address ourselves first to the method of decision employed by the trial judge. The parties, represented by able and seasoned attorneys, presented

testimony as to values which was in substantial conflict. These were not "spur of the moment" opinions, but were rather studied expressions by competent appraisers and certified public accountants. Instead of toiling with the problems presented and indicating some conclusions, the trial judge merely asked each side to submit detailed findings, conclusions and judgment for consideration by the court. There may be exceptional cases in which such a procedure is justified, but they are rare; they are certainly not represented by the instant case. After taking whatever time was necessary to digest the evidence in this case, the trial judge had the judicial responsibility to give utterance — solely from his own lips — of his views. For critical remarks better expressed on this subject, see *United States v. El Paso Natural Gas. Co.*, 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12.

We stretch nearly to the breaking point the presumption that the findings entered by the court were in fact the court's own findings. Doing so, we have concluded that the evidence is sufficient to sustain the figure of $400,000 in lieu of property division, the support money payments of $1,050 per month and the alimony payment of $250 per month, and we affirm the judgment in these particulars. However, we have the further view that the court abused its discretion with respect to the manner of payment of the sum of $400,000, the requirement that interest be paid upon the deferred unpaid balances thereof and the imposition of the $250 monthly penalty.

Mr. Phillips complains that the court's findings improperly were based upon book values of the partnerships and corporations rather than market value figures. It is true that the court admitted into evidence the balance sheets of these firms prepared by Mr. Phillips' accountants and that these financial statements showed book values. However, the principal purpose of the testimony of the different appraisers was to give market value of the land owned by these firms; and land was their principal asset. The certified public accountants modified

the book values in the light of the testimony of the appraisers to reflect the net market values of the firms. The net market value of each firm was multiplied by Mr. Phillips' percentage interest therein to obtain the opinion as to market value of his partnership interests or corporate stock.

Using the values of land given by Mrs. Phillips' appraiser, the partnership in which Mr. Phillips had a 50% interest had assets of approximately $716,000 and the assets of the partnership in which he had a one-third interest had a value approximating $2,003,000. These partnerships had liabilities of $321,500 and $1,301,650, respectively.

Using the values of Mrs. Phillips' appraiser, the nine corporations had combined assets of approximately $5,770,000 in value. These corporations had aggregate liabilities approximating $4,750,000, the payment of a substantial portion of which Mr. Phillips had guaranteed. As a partner he was liable for the aggregate indebtedness of the two partnerships in the approximate amount of $1,623,150. It is to be noted that the aggregate indebtedness of all of the corporations and the two partnerships amounted to about $6,370,000.

Under the evidence submitted by Mrs. Phillips, which incidentally was hotly disputed, the assets which Mr. Phillips owned outright had a value of about $195,000. Using the figures of her appraiser the market value of Mr. Phillips' property was as follows:

| | |
|---|---|
| Corporate stock | $ 368,475 |
| Partnership interests | 416,989 |
| Solely owned property | 195,000 |
| Total | $ 980,464 |

The comparable total figure submitted by Mr. Phillips' accountant, using the values of Mr. Phillips' appraiser, was $333,975. The court accepted the values submitted by Mrs. Phillips' witnesses. The record discloses that some reduction should be made in the figure of $980,464. Nevertheless, under her theory of the case and evidence

presented by her, the amount would still be materially in excess of $800,000. Therefore, while we might have reached a lesser figure or handled property division in another manner, there is evidence to support the $400,000 award and it is not properly within our province to disturb it.

Copies of Mr. Phillips' federal income tax returns for the years 1961 through 1964 were admitted in evidence. The return for the year 1964 disclosed less income than those of the other three years. Using round numbers the 1964 return showed salaries of $33,000, interest of $8,000, partnership losses of $43,000, long term capital gains of $15,000 and short term capital gains of $57,000. Much of the capital gains were being "plowed back" into the enterprises or applied on indebtedness and were not available to Mr. Phillips.

The only property interest of Mrs. Phillips was in two residences at Boulder. Under the decree she was to convey her interest therein to Mr. Phillips. The record did not disclose that she had any income. Her testimony as to her needs and those of the children and the evidence as to Mr. Phillips' income were sufficient to uphold the support money order of $1,050 per month and the $250 per month alimony order.

The nature of a substantial part of the solely owned property of Mr. Phillips was such that it could not be liquidated quickly. The court found as follows:
"[Mr. Phillips'] interest in the corporations and partnerships ... cannot, by reason of the nature of those businesses, be immediately liquidated. Any attempt at an immediate liquidation would seriously impair [Mr. Phillips'] valued interest in the same."
We have been unable to find anything in the record disputing Mr. Phillips' testimony that, if he were compelled to sell or liquidate a substantial portion of his interests, he would be bankrupt. We have already noted the aggregate indebtedness of $6,370,000. It appeared that the enterprises in which Mr. Phillips had fractional interests

134

had inadequate working capital. This, combined with the tremendous liabilities, placed Mr. Phillips in a position in which it would be difficult to borrow and disastrous to have forced liquidations. We are in agreement with his position that the order requiring payment of $100,000 within a month and $12,500 each quarter upon the remaining sum of $300,000 was confiscatory and an abuse of discretion. *Menor v. Menor,* 154 Colo., 475, 391 P.2d 473.

In their briefs the parties have not discussed the propriety of allowing interest upon the unpaid portion of the sum of $400,000. We note the following was stated in *Ovens v. Ovens,* 61 Wash. 2d 6, 376 P.2d 839;

"We adhere to the rule announced in *Berol v. Berol,* 37 Wash. 2d 380, 223 P.2d 1055 (1950), that it is an abuse of discretion, in the absence of a sound reason, to fail to provide for interest upon deferred payments allowed in an equitable division of property. In the instant case, as in the cited case, there is no apparent reason why the respondent should have the use of appellant's award without interest."

See *Arnold v. Arnold,* 258 Iowa 850, 140 N.W.2d 874 to the contrary. Without stating a general rule, we feel that under the circumstances of this case the award of interest was an abuse of discretion. The burden of extracting $400,000 from these enterprises for Mrs. Phillips is so great that Mr. Phillips should not be required to pay interest except upon defaulted installments. Even if we were to follow the rule of *Ovens, supra,* to use its terminology there is "sound reason" for not requiring interest.

The wording of the alimony order was as follows: "The Defendant shall pay unto Plaintiff on the first day of each succeeding month hereafter, as alimony, the sum of $500 per month; provided that upon timely payment to Plaintiff by Defendant of the monies [$400,000] required to be given to Plaintiff by Defendant in Paragraph 1 herein, Defendant's obligation unto Plaintiff for alimony shall be reduced to the sum of $250 per month; that said last mentioned amount of alimony shall con-

tinue thereafter, and shall cease only upon the remarriage of Plaintiff."

The effect of this is, as stated earler in this opinion, an award of $250 alimony plus a penalty. We regard the penalty as being in the same category as interest; it should not be allowed. Upon default by Mr. Phillips, Mrs. Phillips would be entitled to interest on the defaulted payment at the statutory rate; but she should not be awarded a penalty under the guise of alimony.

At the time the writ of error issued from this court Mr. Phillips applied for a stay of execution with respect to the payments to be made on the sum of $400,000. The stay was issued on the condition of the filing of a supersedeas bond in the amount of $200,000, and such a bond was filed. The trial court should make a determination of the total amount which Mr. Phillips should have paid upon the sum of $400,000 between October 25, 1965 and the date of the determination herein ordered. Mrs. Phillips can look to the surety on the bond, if necessary, for the payment of such determined amount; and the surety shall be released as to the balance of the bond. The court shall further determine the manner in which the remainder of the sum of $400,000 is to be paid in the future. In making such determination the court may hear such additional evidence as may be appropriate.

The stay of execution did not apply to the support money payments. At the time writ of error issued Mr. Phillips stated in his petition for stay of execution that he was paying $1,050 monthly support money for the children and $500 monthly as alimony. If he has continued to make all of these payments, it follows that under this opinion he had paid $250 monthly in excess of the requirement for almony. Any such excess should be applied upon the $400,000 award.

Other items in the court's judgment are affirmed without comment.

The judgment is affirmed except that it is reversed with respect to the method of payment of the sum of

$400,000, the matter of interest upon deferred balances of this sum, and the $250 monthly penalty. The cause is remanded for further proceedings consonant with the views expressed herein.

MR. JUSTICE DAY dissents.